**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

|  |  |  |
|---|---|---|
| CHEVRON U.S.A. INC., | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:04cv1365C |
| v. | ) | Judge Braden |
| | ) | |
| UNITED STATES, | ) | |
| Defendant. | ) | |

<u>SUPPLEMENTAL DECLARATION OF MICHELE M. RILEY, CPA</u>

1.   This supplement to my initial declaration of December 6, 2013 is provided in response to the Court's email inquiries of February 24 and 27, 2014.[1] As requested by the Court, this supplemental declaration provides further explanation regarding the figures that are in paragraph 23 of my initial declaration filed on December 6, 2013. I also provide updated figures to account for (1) three letters Chevron sent to the Government in October and November of 2013[2]; (2) the adjustments Chevron made to its damages claim in its filing of January 27, 2014 (*see* Metcalfe Suppl. Decl. at Attach. 1)[3]; (3) updated testimony from Mr. Stone regarding Chevron's use of Techbase International ("Techbase") software on only two zones instead of four (resulting in a $40,893 increase in damages)[4]; (4) corrections to my declaration which I produced at my

---

[1] As of the filing of my initial declaration in December, 2013, and my deposition in January, 2014, I was employed by Invotex, Inc. As of February 1, 2014, I and my staff who assisted in this matter are employed by Stout Risius Ross, Inc.

[2] I understand that Chevron's letters to the Government dated October 17, 2013, November 7, 2013 and November 25, 2013 were provided to the Court in response to the Court's inquiry of February 27, 2014.

[3] Mr. Metcalfe's supplemental declaration updates Chevron's initial damages claim to account for (1) adjustments identified during Mr. Stone's deposition on October 30, 2013 (resulting in a decrease of $32,918 in damages); (2) Chevron's three letters from October and November, 2013 (resulting in a $4,375 increase in damages); and (3) a $11,021 deduction to exclude certain sale-related costs (which I identified in my initial declaration of December 6). *See* Metcalfe Suppl. Decl. at Attach 1.

[4] An adjustment based on the new testimony provided in the form of an errata sheet to Mr. Stone's deposition that I understand the Government received on December 13, 2013.

deposition (which result in an increase in damages of $4,744) [5]; and (5) two adjustments to my "Transactional Analysis" that Chevron identified during my deposition of January 22, 2014 (resulting in a $10,985 increase in damages).[6] Taking all of these adjustments into account results in $14,232,670 in damages for the categories awarded by the Court, under my analysis.[7]

2.  Chevron's most recent adjustments, presented in their filing of January 27, 2014, result in a revised damages claim of $22,581,920 for the four categories awarded by the Court (an increase of $39,564 from Chevron's damages claim presented on July 2, 2013). *See* Metcalfe Suppl. Decl. ¶ 5. I incorporate Chevron's revised damages claim as the new starting point for my analysis here.[8]

3.  Paragraph 23 of my initial declaration provides a summary of Chevron's claimed costs by zone after the re-allocations proposed by Mr. Alan Burzlaff are applied to Chevron's initial allocation of its own costs. *See* Dec. 6, 2014 Decl. ¶ 23. The figures in paragraph 23 are derived from Chevron's presentation of its costs by zone, for all four zones (not just the two zones awarded as damages). *See* INTERIM-4 (Mr. Metcalfe's workpapers, filed with his initial declaration on July 2, 2013).[9] In a similar calculation found in Mr. Burzlaff's declaration of December 6, 2013, he deducted the legal costs Chevron stated it had incurred for each of the four zones (*see* INTERIM-9 to 13) from the total costs Chevron stated it had incurred for each of the zones (*see* INTERIM-4).

---

[5] This correction results in a $1,484 increase in damages, if my Transactional Analysis is combined with Mr. Burzlaff's re-allocations. If my Transactional Analysis is not combined with Mr. Burzlaff's re-allocations, this adjustment results in a $4,744 increase in damages. *See* Supplemental Exhibit 3, n.5.
[6] *See* Supplemental Exhibit 3, n. 4 & 6.
[7] This is $61,774 higher than the final figure provided in my initial declaration ($14,170,896). *See* Riley Decl. of Dec. 6, 2013 ¶ 41. *See* Supplemental Exhibits 1, 2 and 3, attached hereto. Supplemental Exhibits 2 and 3 supersede the summary pages of Exhibits 2, 3, 4 and 5 of my initial declaration of Dec. 6, 2013, all underlying analysis remains relevant to the explanations contained herein.
[8] Supplemental Exhibit 1 shows Chevron's adjusted damages claim broken out by cost category.
[9] Chevron's presentation of its costs by zone was the result of allocations performed by Mr. Norman Stone, as applied by Mr. Metcalfe. *See generally* Chevron's July 2, 2013 filing.

*See* Burzlaff Decl. ¶ 16.[10]  Accordingly, in paragraph 23 I provided a summary of Chevron's costs by zone, for all four zones, after Mr. Burzlaff's re-allocations were applied and Legal Costs had been removed.[11]

4.      In my December 6, 2013 declaration, I analyzed Mr. Burzlaff's re-allocations of the allocations made by Mr. Stone for the purpose of calculating damages.[12]  In response to the Court's recent inquiries, below I provide explanation, with reference to relevant exhibits and documentation,[13] regarding how I applied Mr. Burzlaff's proposed re-allocations of Chevron's claimed costs, as the application of Mr. Burzlaff's re-allocations underlie the figures presented in paragraph 23 of my initial declaration.  As in my initial declaration, I separately discuss each cost category -- Company Payroll and Benefits, CVX Internal Technical Consultants, External Non-Legal Professional and Labor, Legal Costs, and Miscellaneous -- and I provide adjusted amounts for each cost category.

5.      As the starting point for my analysis, I reviewed Mr. Stone's allocations (which are generally described in his initial declaration) and Mr. Metcalfe's workpapers, which were provided with Mr. Metcalfe's initial declaration, as updated by Chevron's filing of January 27.  Mr. Metcalfe's work papers are voluminous (they are paginated INTERIM-1 to 711) and are primarily comprised of data presented in spreadsheet format.[14]  For my analysis, I have reviewed Mr. Metcalfe's, Mr. Stone's, and Mr. Burzlaff's declarations (and the supplements thereto), as well as

---

[10] Mr. Burzlaff explained that he removed the legal costs from Chevron's costs for each zone "for the sake of consistency" in comparing Chevron's costs by zone to the costs of the independent petroleum engineer and the Department of Energy, because "neither NSAI's nor DOE's equity finalization costs include legal costs."  *See* Burzlaff Decl. ¶ 16 and n.4.  I did not analyze this "comparative" aspect of Mr. Burzlaff's declaration.

[11] Mr. Metcalfe's initial declaration provided a summary similar to the one I provided in paragraph 23.  *See* Metcalfe Decl. ¶ 25.

[12] My initial declaration explains that "[m]y analysis, as well as Mr. Burzlaff's adjusted allocations, appl[y] to . . . the costs incurred by Chevron in connection with equity finalization of the Carneros and Stevens zones during the respective time periods delineated by the Court for these zones."  *See* Dec. 6, 2013 Decl. ¶ 6.

[13] The Chronology of Equity Finalization (JE 17) was relied upon heavily by both parties in allocating and re-allocating costs, and is relevant to all of the cost categories.  Therefore, I do not refer to it explicitly for each cost category here.

[14] Mr. Metcalfe provided his workpapers in excel format, which served as the starting point for making the allocation adjustments proposed by Mr. Burzlaff.

the documents and exhibits referred therein, and I have applied Mr. Burzlaff's proposed re-allocations to Chevron's revised damages figures.

6. To the extent Chevron's costs were reflected in invoices that were produced as part of this litigation, the Bates-numbers for the invoices are included in Mr. Metcalfe's work papers. *See* INTERIM-368 to 376, listing invoices for the "External Technical Consultants" cost category; INTERIM-48a to 48f, listing invoices for the "Legal Costs" category.  I and my staff reviewed the specific invoices that are the subject of Mr. Burzlaff's re-allocations.  Regarding Chevron's costs for which there are no invoices or similar documentation, Mr. Metcalfe's work papers contained the amounts for such costs and Mr. Stone's related allocations. *See* INTERIM-67 to 106, listing payroll amounts and allocations; INTERIM-468 to 473, listing internal technical consultants amounts and allocations.

7. My staff also was present telephonically at Mr. Stone's deposition, and I reviewed the transcript of his deposition prior to submitting my initial declaration (I also reviewed the specific excerpts of the transcript that Mr. Burzlaff appended to his declaration, at Exhibit H).  I do not include here references to Mr. Stone's deposition transcript that already have been provided in my initial declaration or in Mr. Burzaff's declaration.

I.   Company Payroll and Benefits

8. Mr. Burzlaff's declaration addresses this category at paragraphs 20 to 35 and the following exhibits to Mr. Burzlaff's declaration are relevant to this category:

- Exhibit A – Excerpts of the Report and Appendix of Mr. Richard Strickland.

- Exhibit I – Chevron's interrogatory response providing a list of the members of Chevron's equity finalization team.

- Exhibit J – Attendee lists for the Dry Gas and Carneros zones equity meetings.

- Exhibit K – Work Orders for equity simulation studies for the Shallow Oil zone.

- Exhibit L – Attendee lists for Shallow Oil zone equity meetings.

- Exhibit M – Lists of participants for conference calls regarding equity finalization of the Shallow Oil Zone.

- Exhibit N – Excerpt of equity deliverable map regarding the Shallow Oil Zone.

- Exhibit O – Chart of Mr. Burzlaff's Labor Hours.[15]

I reviewed all of these exhibits to Mr. Burzlaff's declaration as part of my analysis of this cost category.

9.  In the above referenced documentation, Mr. Burzlaff found support for the re-allocation of the salaries of Mr. Stone, Mark Holtzclaw, Mark Wilson, Ferdando Cardenosa, and Kevin Maneffa. For Mr. Stone and Mr. Holzclaw, re-allocation was based upon the percentages of time that Mr. Burzlaff was able to calculate he had spent on each zone (I understand that Mr. Burzlaff worked on equity finalization for the DOE in a capacity similar to Mr. Stone's for Chevron). *See* Burzlaff Decl. ¶ 32. For the other three Chevron employees, Mr. Burzlaff proposed re-allocations are based upon specific documented work in which each of these employees participated and the allocations Mr. Stone provided for similar Chevron personnel. *See* Burzlaff Decl. ¶ 23-25. For my analysis, I applied Mr. Burzlaff's re-allocated percentages to calculate the payroll and benefit costs for each of these Chevron employees by zone. *See* Dec. 6, 2014 Decl. Ex. 3.3 - 3.3.6.

10. Relatedly, in Chevron's calculation of its own damages, the ratio of the allocation amongst zones for the payroll and benefits category was used by Chevron to calculate Chevron's

---

[15] Exhibit O to Mr. Burzlaff's declaration is a chart of Mr. Burzlaff's labor hours for equity finalization, listed by zone. *See* Burzlaff Decl. ¶ 32 and Ex. O. Mr. Burzlaff explains that he relied upon progress reports (a list of the reports is provided at Exhibit C to his declaration), invoices, task management plans, and timekeeping records -- all of which are contemporaneous documents -- to determine the hours he worked on each zone. *See id.* ¶ 32. I understand that, to the extent certain of these documents had not been produced to Chevron previously (the parties had not previously endeavored to allocate costs by zone), such documents were provided to Chevron in December of 2013 and January of this year (all before Mr. Burzlaff's deposition of January 10, 2014).

damages claim for its "Other" category (which includes Employee Business Expenses, Office Space, Computer Services & Equipment, Office Services & Equipment, Other Equipment, Services & Rentals, and Communications). *See* Stone Decl. at ¶ 22; Initial Metcalfe Decl. at ¶ 20.  I employed this same methodology in applying the re-allocations proposed by Mr. Burzlaff.[16]  *See* Dec. 6, 2014 Decl. Ex. 3.6.

11. Mr. Burzlaff's adjustments to the salary allocations for Mr. Stone, Mr. Holtzclaw, Mr. Wilson, Mr. Cardenosa, and Mr. Maneffa, based on the above referenced documents and for the reasons stated in Mr. Burzlaff's declaration, cause Chevron's claim for Company Payroll & Benefits, as updated by Chevron in its filing of January 27, 2014, to decrease from $7,986,729 to $4,427,659, a reduction of $3,559,070. *See* Supplemental Exhibit 2.  When Mr. Burzlaff's adjusted allocations of the Company Payroll & Benefits costs are applied to the 'Other' damages category, that category is reduced by $886,794, from $2,272,529 to $1,385,735. *See id*.

II. External Non-Legal Professional and Labor

12. Mr. Burzlaff's declaration addresses this category at paragraphs 36 to 42 and Exhibit A of his declaration -- Excerpts of the Report and Appendix of Mr. Richard Strickland -- is relevant to this category.  Mr. Burzlaff's only re-allocation in this category was for the costs Chevron incurred in connection with using Techbase software for equity finalization.  *See* Burzlaff Decl. ¶ 39-41.  This re-allocation was premised in large part upon the deposition testimony of Mr. Stone, provided on October 30, 2013, explaining that Chevron used the software for all four zones. *Id*. ¶ 39.

13. On December 13, 2013 (one week after Mr. Burzlaff and I filed our declarations on December 6, 2013), Chevron provided counsel for defendant an errata sheet for Mr. Stone's

---

[16] Mr. Metcalfe explains his allocation method for the Other cost category as: "in a given month, if 25% of the labor was ultimately identified to the Shallow Oil Zone, then 25% of these cost types was allocated to the Shallow Oil Zone in that month." *See* Initial Metcalfe Decl. at 20. This demonstrates the importance of the accuracy of allocation within Payroll and Benefits as that cost category forms the basis for the allocation of $2.9 million in Other costs.

deposition, and Mr. Stone changed his testimony regarding Techbase, stating that Chevron had not used the software on all four zones (as he testified at deposition), but rather only used the software on the Stevens and Shallow Oil Zones.  During Mr. Burzlaff's deposition on January 10, 2014, this issue was discussed and Mr. Burzlaff did not take issue with Mr. Stone's amended testimony. *See* Burzlaff Dep. Tr at 362.

14.     To take Mr. Stone's amended testimony into account, I have adjusted the re-allocation of the Techbase costs so that the costs are apportioned equally between the Stevens and Shallow Oil Zones (instead of amongst all four zones, as was done in my initial declaration).  I have conferred with Mr. Burzlaff, and he agrees with this adjustment to his re-allocation. This adjustment causes Chevron's claim for External Non-Legal Professional and Labor costs, as updated by Chevron in its filing of January 27, 2014, to decrease from $2,953,001 to $2,646,991, a reduction of $306,010 (this is appreciably less than the $346,903 reduction resulting from Mr. Stone's initial testimony, *see* Riley Decl. of Dec. 6, 2013 ¶ 18).  *See* Supplemental Exhibit 2.

III.    Chevron Internal Technical Consultants

15.     Mr. Burzlaff's declaration addresses this category at paragraphs 43 to 49, and the following exhibits from Mr. Burzlaff's declaration are relevant to this category:

- Exhibit K – GO-113 Work Orders and Table Summary thereof.
- Exhibit L – SOZ meetings.

In addition, certain passages of the deposition testimony of Genesh Thakur, which are cited in Mr. Burzlaff's declaration and in my initial declaration, are also relevant to this category, as well as "Native File 3B," dated May 26, 2011 (JE 1868).[17]

---

[17] In the "Native" file, 99 percent of the line items for the work performed by Chevron Consultants in 1999 are identified, in the 'title' field, as being incurred in connection with the Shallow Oil Zone. *See* Burzlaff Decl. ¶ 19.

16.     Mr. Stone allocated all of the CVX Internal Technical Consultant costs to the Stevens and Shallow Oil zones.  *See* INTERIM-474 to 478.  At the start of his allocations, Mr. Stone assigned all costs to the Stevens zone.  *Id.*  Starting in July 1998, he began to split the costs evenly between the Stevens and Shallow Oil zones.  *Id.*  Next, in January 1999, he began to allocate costs 25 percent to Stevens and 75 percent Shallow Oil.  *Id.*  Finally, in January 2000, he began to allocate costs 10 percent Stevens and 90 percent Shallow Oil.  *Id.*

17.     Mr. Burzlaff adjusted the allocations provided by Mr. Stone.  Mr. Burzlaff's final adjustment changes were to allocate "50 percent to the Stevens Zone and 50 percent to the SOZ for the period August of 1997 through October of 1997, then 100 percent to Stevens from November of 1997 through March of 1998, and, starting in April of 1998, an allocation of 90 percent to the SOZ."  *See* Burzlaff Decl. ¶ 48.  The application of these adjustments to Chevron's damages claim results in damages of $2,958,261 for this category, a reduction of $789,451.  *See* Dec. 6, 2014 Decl. Ex. 3.5, 3.5.1 and Supplemental Exhibit 2.

## IV.     Legal Costs

18.     Mr. Burzlaff's declaration addresses this category at paragraphs 50 to 55 and the following exhibits from Mr. Burzlaff's declaration are relevant to this category:

- Exhibit Q – List of Fried Frank Invoices.
- Exhibit R – Re-allocation of Fried Frank Invoices.

19.     Mr. Burzlaff found that for certain Fried Frank invoices, there was "no supporting description of services rendered or other documentation that would enable one to independently determine the zone or topic to which each invoice applies."  *See* Burzlaff Decl. ¶ 51.  Mr. Burzlaff then re-allocated four invoices which Mr. Stone had allocated only to the Stevens and Carneros zones, relying on evidence of specific events during the relevant time period.  I originally calculated this adjustment in Exhibit 3.2 to my original declaration.  These adjustments to the allocations of

8

certain Fried Frank invoices results in a decrease in Chevron's damages claim of $126,420, to $4,448,749 for this category.  *See* Supplemental Exhibit 2.

V.   Miscellaneous Expenses

20.   Chevron's Miscellaneous Expenses cost category is similar to its "Other" category (which is discussed above in connection with the "Payroll" category), as Chevron's allocations for Miscellaneous Expenses are dependent upon the allocations for all of the other categories.  The allocation percentages used in this category are equivalent to the monthly average allocation for all of the remaining categories in Chevron's claims.  *See* Initial Metcalfe Decl. ¶ 21.  For example, in a given month, if 75 percent of Legal Costs, Company Payroll and Benefits, External Non-Legal Professional and Labor, CVX Internal Technical Consultants, and Other costs were allocated to the Stevens zone; then 75 percent of the Miscellaneous Expenses would be allocated to that same zone.  This inter-dependency demonstrates the importance of accurate allocations for each of Chevron's other cost categories.

21.   As a result of applying the various adjustments described above, there is a resulting $2,860 decrease in damages for this category, resulting in a total of $54,999 in damages for Miscellaneous Expenses.

II.   Aggregate Results Of The Re-Allocations, Taking Into Account Chevron's Adjusted Figures

22.   The adjustments provided by Mr. Burzlaff reduce Chevron's updated damages claim, which it presented on January 27, 2014, by $5,670,606 -- from $22,581,920 to $16,911,314.  *See* Supplemental Exhibit 2.

23.   Regarding paragraph 23, as a result of applying Mr. Burzlaff's adjustments to Chevron's updated allocations of January 27, 2014, I have re-calculated the costs allocated to each

Elk Hills zone (excluding Legal Costs) as follows:

| | |
|---|---|
| Stevens | $11,542,791 (48.9%) |
| SOZ | $11,584,742 (49.1%) |
| Carneros | $282,476 (1.2%) |
| DGZ | $188,579 (0.8%) |
| Total | $23,598,589 (100%) |

24.    This summary was calculated using the same method described above (taking Mr. Metcalfe's implementation of Mr. Stone's allocations as a starting point, I adjusted those allocations in accordance with Mr. Burzlaff's re-allocations and also removed legal costs) and covers the entire time period of Chevron's allocations.

III.    Adjustment To The Results Of The Transactional Analysis

25.    I have also updated my Transactional Analysis to reflect the updated figures discussed above, and to include two issues that Chevron identified during my deposition. *See* Chevron cover filing of January 27, 2104 at 3 n.1. The results of these analyses are presented in Supplemental Exhibits 2 and 3, attached hereto, and these adjustments cause a $3,907,391 reduction in Chevron's damages, considering the Transactional Analysis alone, or an aggregate decrease of $8,349,250, in Chevron's damages, when the Transactional Analysis is added to the adjustments resulting from Mr. Burzlaff's updated re-allocations.

26.    I declare under penalty of perjury that the content herein is true and correct. Executed on March 3, 2014.

*[signature]*

Michele M. Riley

Supplemental Exhibit 1

## Chevron's Corrections to Damages Claims - By Cost Category

| Cost Type | | Chevron's Previous Damages Claim 1/ | Chevron's Adjustments 2/ | Chevron's Current Damages Claim |
|---|---|---:|---:|---:|
| Legal Costs - Stevens and Carneros | | $ 4,564,606 | $ 10,563 | $ 4,575,169 |
| Legal Costs - FOIA and Sanctions | | 995,110 | (6,189) | 988,921 |
| Company Payroll & Benefits | | 7,986,729 | - | 7,986,729 |
| External Non-Legal Prof & Labor | | 2,963,952 | (10,951) | 2,953,001 |
| CVX Internal Technical Consultants | | 3,747,712 | - | 3,747,712 |
| Other | | 2,272,599 | (70) | 2,272,529 |
| Miscellaneous Expenses | 3/ | 57,859 | - | 57,859 |
| **Chevron's Adjusted Damages Claim** | | **$ 22,588,567** | **$ (6,647)** | **$ 22,581,920** |

**Sources/Notes**:

1/ Mr. Metcalfe's Chevron Interim Ruling - Damages Binder, Interim-3 as updated by Exhibit 22 to the Deposition of Mr. Stone dated October 30, 2013.

2/ See Supplemental Declaration of Kenneth P. Metcalfe, Attachment 1.

3/ Mr. Metcalfe did not include adjustments to this category. However, given the way he has performed previous allocations of this category, one would expect to see a minor adjustment here.

**Summary of Adjustments to Chevron's Damages Claim**

| Cost Type | Chevron's Corrected Damages Claim 1/ | Adjusted Claim Based on: | | |
| --- | --- | --- | --- | --- |
| | | Mr. Burzlaff's Allocations 2/ | Transaction Analysis 2/ | Combined Analysis 2/ |
| Legal Costs - Stevens and Carneros | $ 4,575,169 | $ 4,448,749 | $ 4,554,269 | $ 4,429,172 |
| *Reduction in Damages Claim* | | *(126,420)* | *(20,900)* | *(145,998)* |
| Legal Costs - FOIA and Sanctions | 988,921 | 988,921 | 988,921 | 988,921 |
| *Reduction in Damages Claim* | | *(0)* | *(0)* | *(0)* |
| Company Payroll & Benefits | 7,986,729 | 4,427,659 | 6,889,111 | 3,847,167 |
| *Reduction in Damages Claim* | | *(3,559,070)* | *(1,097,618)* | *(4,139,562)* |
| External Non-Legal Prof & Labor | 2,953,001 | 2,646,991 | 2,743,567 | 2,437,558 |
| *Reduction in Damages Claim* | | *(306,010)* | *(209,433)* | *(515,443)* |
| CVX Internal Technical Consultants | 3,747,712 | 2,958,261 | 2,132,448 | 1,683,250 |
| *Reduction in Damages Claim* | | *(789,451)* | *(1,615,264)* | *(2,064,462)* |
| Other | 2,272,529 | 1,385,735 | 1,308,391 | 791,603 |
| *Reduction in Damages Claim* | | *(886,794)* | *(964,138)* | *(1,480,926)* |
| Miscellaneous Expenses | 57,859 | 54,999 | 57,822 | 54,999 |
| *Reduction in Damages Claim* | | *(2,860)* | *(37)* | *(2,860)* |
| **Chevron's Adjusted Damages Claim** | **$ 22,581,920** | **$ 16,911,314** | **$ 18,674,530** | **$ 14,232,670** |
| *Reduction to Chevron's Corrected Damages Claim* | | *$ (5,670,606)* | *$ (3,907,391)* | *$ (8,349,250)* |

**Sources/Notes**:

1/ See Supplemental Exhibit 1.

2/ See Supplemental Exhibit 3.

**Adjustments to 12/6/13 Riley Declaration**

| Cost Type | Chevron's Adjusted Damages Claim 1/ | Adjustments made by Mr. Metcalfe 2/ | Correction to Riley Declaration | Adjustment to Techbase Allocations 3/ | Resulting Adjustment to Misc. Expenses | Updated Damages Claim |
|---|---|---|---|---|---|---|
| ***Chevron's Adjusted Damages Claim Using Mr. Burzlaff's Adjusted Allocations*** | | | | | | |
| Legal Costs - Stevens and Carneros | $ 4,438,186 | $ 10,563 | $ - | $ - | $ - | $ 4,448,749 |
| Legal Costs - FOIA and Sanctions | 995,110 | (6,189) | - | - | - | 988,921 |
| Company Payroll & Benefits | 4,427,659 | - | - | - | - | 4,427,659 |
| External Non-Legal Prof & Labor | 2,617,049 | (10,951) | - | 40,892 | - | 2,646,990 |
| CVX Internal Technical Consultants | 2,958,261 | - | - | - | - | 2,958,261 |
| Other | 1,385,805 | (70) | - | - | - | 1,385,735 |
| Miscellaneous Expenses | 55,034 | - | - | - | (35) | 54,999 |
| Total | $ 16,877,103 | $ (6,647) | | $ 40,892 | $ (35) | $ 16,911,314 |
| ***Chevron's Damages Claim Adjusted for Transaction Analysis*** | | | | | | |
| Legal Costs - Stevens and Carneros | $ 4,532,982 | $ 10,563 | $ 10,724 4/ | $ - | $ - | $ 4,554,269 |
| Legal Costs - FOIA and Sanctions | 995,110 | (6,189) | - | - | - | 988,921 |
| Company Payroll & Benefits | 6,884,367 | - | 4,744 5/ | - | - | 6,889,111 |
| External Non-Legal Prof & Labor | 2,739,233 | - | 4,334 6/ | - | - | 2,743,567 |
| CVX Internal Technical Consultants | 2,132,448 | - | - | - | - | 2,132,448 |
| Other | 1,308,391 | - | - | - | - | 1,308,391 |
| Miscellaneous Expenses | 57,859 | - | - | - | (37) | 57,822 |
| Total | $ 18,650,391 | $ 4,375 | $ 19,801 | $ - | $ (37) | $ 18,674,530 |
| ***Chevron's Damages Claim Adjusted for Combination of Mr. Burzlaff's Allocations and Transaction Analysis*** | | | | | | |
| Legal Costs - Stevens and Carneros | $ 4,407,884 | $ 10,563 | $ 10,724 4/ | $ - | $ - | $ 4,429,172 |
| Legal Costs - FOIA and Sanctions | 995,110 | (6,189) | - | - | - | 988,921 |
| Company Payroll & Benefits | 3,845,683 | - | 1,484 5/ | - | - | 3,847,167 |
| External Non-Legal Prof & Labor | 2,392,331 | - | 4,334 6/ | 40,892 | - | 2,437,558 |
| CVX Internal Technical Consultants | 1,683,250 | - | - | - | - | 1,683,250 |
| Other | 791,603 | - | - | - | - | 791,603 |
| Miscellaneous Expenses | 55,034 | - | - | - | (35) | 54,999 |
| Total | $ 14,170,896 | $ 4,375 | $ 16,542 | $ 40,892 | $ (35) | $ 14,232,670 |

**Sources**:
1/ See Declaration of Michele M. Riley dated December 6, 2013, Exhibits 3, 4 and 5.
2/ See Supplemental Exhibit 1.
3/ Given the updated testimony from Mr. Stone I have re-allocated Techbase International costs evenly between the Stevens and Shallow Oil zones. This causes Chevron's damages claim for the Stevens zone to increase from $258,287 to $306,010 (50% of the total Techbase costs), an increase of $47,723, and a decrease in Chevron's damages claim for the Carneros zone from $6,830 to zero. See 12/6/13 Riley Decl. Ex. 3.4. for the starting point of this analysis.
4/ A $6,651 correction was brought to my attention by counsel for Chevron at my 1/22/14 deposition (pp. 169-176). Additionally, this adjustment includes the exclusion of sale related costs, $4,073, seen in my 12/6/13 Declaration, Exhibit 5.8 .
5/ Adjusted to account for a correction to my 12/6/13 Declaration Exhibit 4.7 and 5.7 disclosed at my deposition.
6/ A $4,334 correction was brought to my attention by counsel for Chevron at my 1/22/14 deposition, pp. 169-176.